RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 07a0476p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

FOR YOUR INFORMATION

UNITED STATES OF AMERICA,

    *Plaintiff-Appellee,*

v.

PAUL M. LALONDE,

    *Defendant-Appellant.*

No. 06-4536

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 02-00168—Sandra S. Beckwith, Chief District Judge.

Argued: October 26, 2007

Decided and Filed: December 12, 2007

Before: KEITH and CLAY, Circuit Judges; STEEH, District Judge.[*]

---

## COUNSEL

**ARGUED:** Michael M. Losavio, Louisville, Kentucky, for Appellant. Christopher K. Barnes, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Michael M. Losavio, Louisville, Kentucky, for Appellant. Christopher K. Barnes, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee.

---

## OPINION

---

    CLAY, Circuit Judge. Defendant Paul M. Lalonde ("Lalonde") appeals the conviction and 78-month sentence imposed by the district court following his plea of guilty to wire fraud, 18 U.S.C. § 1343, and income tax evasion, 26 U.S.C. § 7201. Lalonde challenges his conviction on the grounds of alleged violations of Federal Rules of Criminal Procedure 10 and 11. Lalonde appeals his sentence on the basis of the district court's alleged misapplication of the United States Sentencing Guidelines (the "Guidelines") and for unreasonableness. For the reasons that follow, we **AFFIRM** both the conviction and sentence imposed by the district court.

---

[*] The Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

# I. BACKGROUND

From 1994 to 1998, Lalonde engaged in a scheme to fraudulently obtain over $1.6 million from various individuals and corporations. Lalonde and his associates, Richard G. Liggett ("Liggett") and Thomas McGhee ("McGhee"), obtained money from victims by falsely representing that they worked as either attorneys or financial advisors who would invest the victims' money. Rather than investing the money, however, Lalonde and his associates converted the funds to their own personal use. Lalonde failed to report this money as taxable income and thus willfully avoided paying federal income tax during these years as well.

The only details of the scheme that are relevant for this appeal concern Lalonde's dealings with Magellin Entertainment ("Magellin") and with Wright Gaming. In 1997 and 1998, Lalonde, with the help of McGhee, a registered securities broker with Continental Capital Securities ("Continental Capital") in Toledo, Ohio, induced Magellin, a California based entity, to send $880,319 to Lalonde for the purpose of enhancing Magellin's ability to secure financing for its motion picture business. Lalonde told Magellin that he would deposit this money in an escrow account and would provide Magellin with certificates of deposit to use as default collateral on any loans that Magellin might seek. The certificates of deposit were to be protected by default insurance and were to be placed with McGhee in an account set up for Magellin at Continental Capital. Lalonde never obtained any such certificates, but instead spent a substantial part of the $880,319 on personal expenses and repayment of earlier victims of the scheme.

In 1998, Lalonde and Liggett similarly induced Wright Gaming to send them $460,000 for the purpose of assisting Wright Gaming to obtain $45 million in financing for a barge casino on the Mississippi River. Lalonde and Liggett instructed Wright Gaming to wire transfer the funds to an account in the name of "Colverleaf" at Continental Capital. The money sent to the account would be used to rent certificates of deposit owned by others and to buy Treasury bills which would enhance Wright Gaming's ability to secure financing. Cloverleaf would then provide Wright Gaming with the $45 million loan. After Wright Gaming wired the money, $73,000 was transferred to Lalonde's account and $46,000 went to Liggett. Lalonde and Liggett did not rent any Treasury bills nor did they obtain financing for Wright Gaming. Instead, they used the money for their own personal expenses.

Based upon his involvement in this scheme, Lalonde was indicted on December 4, 2002 in the Southern District of Ohio for one count of conspiracy, in violation of 18 U.S.C. § 371, nineteen counts of wire fraud, in violation of 18 U.S.C. § 2 and § 1343, nineteen counts of money laundering, in violation of 18 U.S.C. § 2 and § 1956, and three counts of income tax evasion, in violation of 26 U.S.C. § 2 and § 7201.

On January 16, 2003, Lalonde was arraigned on the indictment before a federal magistrate judge. Prior to the arraignment, defense counsel was provided with a copy of the indictment. At the hearing, the attorney for the government offered to read the indictment to Lalonde if he chose not to waive such a reading. However, because defense counsel proceeded to address other matters with the court, the indictment was never read to Lalonde and no waiver of reading was made. Lalonde did not object to the magistrate judge's failure to read the indictment.

On December 16, 2003, pursuant to a written plea agreement with an attached Statement of Facts, Lalonde entered a plea of guilty to Count 3 (wire fraud) and Count 41 (income tax evasion) of the indictment. At the hearing, the district judge confirmed that Lalonde had read and understood the indictment and had discussed all the counts charged in the indictment, and any defenses thereto, with defense counsel. The district judge also questioned Lalonde and the government about the plea agreement and Lalonde's awareness of the consequences of changing his plea. Based on this inquiry,

the district court determined that there was a factual basis for the plea and that Lalonde was aware of the charges against him and was pleading guilty knowingly and voluntarily.

As part of the process of entering the plea, Kent Rogers, a Special Agent with the Internal Revenue Service, read into the record a statement of facts relevant to the wire fraud and income tax evasion charges. In particular, Special Agent Rogers stated that "[a]mong the *interstate* wire communications which furthered the fraud scheme that is set forth in Count 3 . . . defendant caused Magellin to wire transfer $550,000 from outside the Southern Judicial District of Ohio to his Clermont Savings personal checking account in the Southern District of Ohio." J.A. at 127 (emphasis added).[1] Lalonde confirmed that Special Agent Rogers' account of the facts was accurate and that the Statement of Facts attached to the plea agreement was also correct.

The district judge then summarized the elements of wire fraud and informed Lalonde that the facts as set forth by Special Agent Rogers indicated that Lalonde was guilty of wire fraud. The judge's summary of the elements of wire fraud failed to include the word "interstate."[2] Nevertheless, Lalonde confirmed that he had in fact committed the offenses of wire fraud and income tax evasion as alleged in the indictment. Lalonde raised only one objection to the factual account – which concerned the calculation of the amount of unpaid taxes. After discussing this issue, the district court accepted Lalonde's guilty plea and adjudged Lalonde guilty of the wire fraud and income tax evasion charges. During this plea hearing, Lalonde raised no objections regarding the failure of the magistrate judge to read the indictment or his lack of understanding concerning the elements of the wire fraud charge.

On December 18, 2003, because of concerns regarding Lalonde's health, the district judge ordered a medical study of Lalonde. Shortly thereafter, on December 21, 2003, Lalonde sent a letter along with a document entitled "Statement of Facts" to the district court, which presented a different version of the events giving rise to the charges.[3] Over the next couple years, the district court granted Lalonde several continuances of the sentencing hearing in order to permit further medical examinations of Lalonde and to await the Supreme Court's sentencing decisions in *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005).

On June 30, 2006, Lalonde filed a *pro se* Motion to Withdraw Plea, followed by a *pro se* Supplemental Motion to Withdraw Plea on July 11, 2006. In these motions, Lalonde stated that he was not in proper physical or mental health at the time of his plea. He further claimed that "the only reason" that he plead guilty was because of "the state of his health and the promises of AUSA Brinkman" that his sentence would not be more than 30 months. J.A. at 77. Lalonde did not object that his wire fraud conviction was not based upon an interstate wire transfer. Likewise, Lalonde did

---

[1] Magellin Entertainment was identified in the indictment as a company located in California. Appendix B-1 of the Statement of Facts attached to the plea agreement also identified Neil Michael, a person associated with Magellin, as located in Tarzana, California.

[2] The district court told Lalonde:

> [Special Agent Rogers] related facts which would represent to the Court that you willfully and knowingly devised a scheme or artifice to defraud for obtaining money or property by means of false pretenses, representations, or promises. That you transmitted or caused to be transmitted by means of wire, writings, signs, signals, pictures or sounds for the purpose of executing such scheme or artifice . . .

J.A. at 30.

[3] This different version of events did not, however, dispute the charge that Lalonde had used interstate wire transmissions to further his scheme to defraud.

not complain that he had never been read and did not understand the indictment. The district court held a hearing on these motions on July 31, 2006 at which Lalonde withdrew his Motion to Withdraw Plea and did not make any further objections regarding his conviction.

On November 22, 2006, the district judge held Lalonde's sentencing hearing. At the hearing, Lalonde motioned to withdraw the "Statement of Facts" in the December 21, 2003 letter which he had sent to the district court. Lalonde also raised seven objections to the presentence report, all of which were overruled. In particular, the court found that: (1) Lalonde qualified for a two-level enhancement, pursuant to U.S.S.G. § 2F1.1, because the crime was a scheme to defraud more than one person; (2) Lalonde qualified for a further two-level enhancement, pursuant to U.S.S.G. § 3B1.1, because he was a organizer, leader, manager, or supervisor of the scheme to defraud Magellin; (3) Lalonde's criminal history score was properly increased by three points, pursuant to U.S.S.G § 4A1.1, for a 1989 Kentucky felony conviction based upon his guilty plea entered *in abstentia*; and (4) the amount defrauded from Wright Gaming was properly included in the amount of loss calculation pursuant to U.S.S.G. § 1B1.3.[4] The district court concluded that Lalonde had an adjusted offense level of 20 with a category V criminal history and, thus, the Guidelines sentencing range was 63 to 78 months.

Recognizing that the Guidelines are merely advisory post-*Booker*, the district court then proceeded to consider the other sentencing factors enumerated in 18 U.S.C. § 3553(a). In particular, the court considered: (1) Lalonde's involvement in a scheme which defrauded several individuals as well as the United States Treasury of over $1.6 million; (2) Lalonde's extensive prior criminal history of fraud and false statements; (3) Lalonde's poor physical health, including his heart condition; and (4) the need for Lalonde to gain additional vocational skills. The district court concluded that consecutive sentences of 60 months on the wire fraud charge and 18 months on the income tax evasion charge were sufficient but not greater than necessary to comply with the factors set forth in § 3553(a). In as much as Lalonde raised no further objections to such a sentence, the district court imposed the sentence and informed Lalonde of his right to appeal.

On November 30, 2006, Lalonde filed this timely appeal.

## II. DISCUSSION

On appeal, Lalonde raises two procedural challenges to his conviction and a procedural and substantive reasonableness challenge to his sentence. First, Lalonde argues that his conviction should be invalidated because the magistrate judge committed plain error in failing to read or summarize the indictment at the arraignment. Second, Lalonde seeks reversal of his conviction because of the district court's alleged failure to comply with Federal Rule of Criminal Procedure 11 which requires the court to determine that there is a factual basis for the plea and that it is made knowingly and voluntarily. Third, Lalonde contends that the district court failed to follow proper sentencing procedures by incorrectly calculating the advisory Guidelines range. Finally, Lalonde challenges the substantive reasonableness of his 78-month sentence. We consider each of these arguments in turn.

---

[4] In sentencing Lalonde, the district court applied the 1997 edition of the Guidelines. Accordingly, all references to Guidelines' provisions in this opinion are to the 1997 edition.

### A. THE DISTRICT COURT DID NOT COMMIT PLAIN ERROR BY FAILING TO READ OR SUMMARIZE THE INDICTMENT AT ARRAIGNMENT

#### 1. Preservation of the Issue

The government argues that Lalonde has waived his right to challenge his conviction based upon the magistrate judge's failure to read the indictment. We agree.

A defendant waives his right to appeal constitutional violations occurring prior to a plea of guilty once the defendant enters his plea. *United States v. Kirksey*, 118 F.3d 1113, 1115 (6th Cir. 1997). "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of guilty plea. He may only attack the voluntary and intelligent character of the guilty plea." *Id.* (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). Furthermore, a challenge regarding improper arraignment is waived if the defendant fails to object to the defect prior to appeal. *See Garland v. Washington*, 232 U.S. 642, 646 (1914) ("A waiver ought to be conclusively implied where the parties had proceeded as if defendant had been duly arraigned and a formal plea of not guilty had been interposed, and where there was no objection made on account of its absence until, as in this case, the record was brought to this court for review."); *King v. United States*, 25 F.2d 242, 243-44 (6th Cir. 1925) ("[E]ven though the defendant had not been formally arraigned, or had not pleaded to the indictment, his proceeding to trial without raising this objection would imply a waiver, or at least the formal defect would not be prejudicial.").

As Lalonde has already plead guilty to the wire fraud and tax evasion charges and as he raised no objection to his arraignment at any point prior to this appeal, he has waived his right to challenge the magistrate judge's failure to read the indictment at arraignment. However, in order to clarify the law in this area, we find that, even if Lalonde had not waived this issue, his challenge is without merit.

#### 2. Standard of Review

We review violations of the Federal Rules of Criminal Procedure for plain error if the defendant fails to object before the district court. *United States v. Vonn*, 535 U.S. 55, 66 (2002) ("A defendant's right to review of error he let pass in silence depends upon the plain error rule."); *United States v. Murdock*, 398 F.3d 491, 496 (6th Cir. 2005). *See also* Fed. R. Crim. P. 52(a). The defendant bears the burden of proof on plain error review. *Vonn*, 535 U.S. at 62. The defendant "must show that there is (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or reputation of judicial proceedings." *Murdock*, 398 F.3d at 496 (quoting *Johnson v. United States*, 520 U.S. 461, 467 (1997)).

#### 3. Analysis

Rule 10(a) of the Federal Rules of Criminal Procedure provides:

> An arraignment must be conducted in open court and must consist of: (1) ensuring that the defendant has a copy of the indictment or information; (2) reading the indictment or information to the defendant or stating to the defendant the substance of the charge; and then (3) asking the defendant to plead to the indictment or information.

Case 1:02-cr-00168-SSB   Document 124   Filed 12/12/2007   Page 6 of 18

No. 06-4536          *United States v. Lalonde*                              Page 6

In the instant case, the magistrate judge clearly violated this rule by failing to read or explain the indictment to Lalonde at his arraignment. Thus, Lalonde can satisfy the first two prongs of the plain error test by showing that the lower court committed an error that was plain. However, Lalonde cannot demonstrate that this error affected his substantial rights.

In *Garland*, the Supreme Court held that a lack of a formal arraignment does not deprive an accused of any substantial right as long as he has sufficient notice of the accusation and adequate opportunity to defend himself. 232 U.S. at 645. Additionally, the courts of appeals which have considered this issue have likewise found that a technical failure to comply with Rule 10 does not affect a substantial right as long as the accused has sufficient notice of the charges and an adequate opportunity to prepare a defense. *See United States v. Mancias*, 350 F.3d 800, 807 (8th Cir. 2003) (finding that the "absence of formal arraignment is of little consequence") (quoting *United States v. Reynolds*, 781 F.2d 135, 136 n. 2 (8th Cir. 1986)); *United States v. Romero*, 640 F.2d 1014, 1015 (9th Cir. 1981) (finding that defendant was not subject to any prejudice as a result of the district court's failure to read the indictment to him at arraignment because defendant had received a copy of the indictment and had an opportunity to read it before making his plea); *United States v. Coffman*, 567 F.2d 960, 961 (10th Cir. 1977) (finding that defendant was not prejudiced by the failure to be formally arraigned when he had been given a copy of the indictment and when the failure to arraign was inadvertent); *United States v. Rogers*, 469 F.2d 1317, 1318 (4th Cir. 1972) (finding that defendant suffered no prejudice when the court failed to read the indictment or provide a copy to defendant at arraignment because he was represented by counsel and did not allege that he was ignorant of the offense charged); *United States v. Clark*, 407 F.2d 1336, 1337 (4th Cir. 1969) (finding no merit in defendant's challenge for failure to receive a copy of the indictment when defense counsel had been given a copy of the indictment and defendant had informed the court that he had read the indictment and understood the charges against him).

The facts in this case demonstrate that no substantial rights of Lalonde were affected by the magistrate judge's failure to read the indictment at arraignment. Lalonde was represented by counsel at the arraignment. This attorney was provided a copy of the indictment. Lalonde also told the district judge at his change of plea hearing that he had read and understood the indictment and discussed it and any possible defenses with his attorney. Lalonde has not identified any way in which this technical violation of Rule 10 prejudiced his ability to defend himself. Accordingly, we find that even if Lalonde had preserved this issue for appeal, the district court's actions would withstand review on appeal.

**B.  THE DISTRICT COURT PROPERLY COMPLIED WITH FEDERAL RULE OF CRIMINAL PROCEDURE 11 WHEN TAKING LALONDE'S PLEA**

**1.  Standard of Review**

We review violations of Rule 11 for plain error if the defendant did not object before the district court. *Murdock*, 398 F.3d at 496 (citing *Vonn*, 535 U.S. at 63). The defendant bears the burden of proof on plain error review. *Vonn*, 535 U.S. at 62. The defendant "must show that there is (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or reputation of judicial proceedings." *Murdock*, 398 F.3d at 496 (quoting *Johnson*, 520 U.S. at 467).

In applying plain error review, we have held the "district court errs when it 'fails to comply with the clear mandate of a Federal Rule of Criminal Procedure,' and this error is plain." *United States v. McCreary-Redd*, 475 F.3d 718, 722 (2007) (quoting *Murdock*, 398 F.3d at 497). We have further found that violations of Rule 11(b)(1)(G)'s requirement of ensuring the existence of a factual basis for the plea affect a defendant's substantial rights and seriously affect the fairness and integrity

of the judicial proceeding. *Id.* at 726 (citing *United States v. Syal*, 963 F.2d 900, 905 (6th Cir. 1992)). Accordingly, we clarify today that a district court commits plain error when it violates Rule 11(b)(1)(G).

However, for a defendant seeking reversal of his conviction, plain error review requires a heightened showing of prejudice. *See United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). "[A] defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea." *Id.* In other words, the defendant must convince the reviewing court that "the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding." *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). "[I]n assessing the affect of a Rule 11 error, a reviewing court must look to the entire record, not to the plea proceedings alone." *Id.* at 80 (citing *Vonn*, 535 U.S. at 74-75). As Lalonde is asking this Court to reverse his conviction entered upon a guilty plea, he must meet this heightened standard.

### 2. Analysis

Lalonde argues that the district court violated Rule 11 in three distinct ways. First, he claims the district court violated 11(b)(1)(G) by failing to adequately inform him of the nature of the charges against him. Second, Lalonde contends that the district court violated 11(b)(2) by failing to ensure that his plea was voluntarily and intelligently given. Finally, he argues that the district court failed to determine that a factual basis existed for Lalonde's plea in violation of 11(b)(3). We find each of these arguments unconvincing.

#### a. Violation of Rule 11(b)(1)(G)

Rule 11(b)(1)(G) requires the district court, before accepting a plea of guilty, to "inform the defendant of, and determine that the defendant understands . . . the nature of each charge to which the defendant is pleading." This rule "expressly directs the district judge to inquire whether a defendant who pleads guilty understands the nature of the charge against him and whether he is aware of the consequences of his plea." *McCarthy v. United States*, 394 U.S. 459, 464 (1969). The "district court must be satisfied, after discussion with the defendant in open court, that the defendant understands the elements of the offense." *McCreary-Redd*, 475 F.3d at 723 (quoting *Syal*, 963 F.2d at 905). "At a minimum, the defendant must understand the 'critical' or 'essential' elements of the offense to which he or she pleads guilty." *United States v. Valdez*, 362 F.3d 903, 909 (6th Cir. 2004).

The Supreme Court has suggested that providing the defendant with a copy of the indictment prior to his plea of guilty creates a presumption that the defendant was informed of the nature of the charge against him. *Bousley v. United States*, 523 U.S. 614, 618 (1998). *See also Valdez*, 362 F.3d at 911. However, we have found that the amount of discussion required to properly inform the defendant of the charges against him varies based upon the complexity of the charges. "In a simple case, the district court may need only to read the indictment and allow the defendant to ask questions about the charge." *Valdez*, 362 F.3d at 908 (quoting *Syal*, 963 F.2d. at 904-05 (citing *United States v. Van Buren*, 804 F.2d 888, 891 (6th Cir. 1986))). *See also United States v. Edgecomb*, 910 F.2d 1309, 1313 (6th Cir. 1990) (holding that, for a case involving conspiracy to possess cocaine with intent to distribute, the government's reading of the indictment, accompanied by the court's reciting of the counts and asking defendants whether they understood the charges and if they had discussed the charges with their attorneys was procedurally sufficient to establish defendants' understanding of the charges against them). "When the case is more complex, further explanation may be required." *Valdez*, 362 F.3d at 908 (quoting *Syal*, 963 F.2d at 904-05). *See also Van Buren*, 804 F.2d at 892 (holding that, for a case involving the charge of using a communication facility to further a conspiracy, the government's reading of the indictment and defendant's admission of guilt was not

sufficient to establish defendant's understanding of the charge). However, "[s]ome rehearsal of the elements of the offense is necessary for any defendant [and] failure to identify [these elements] is error and cannot be said to be harmless, even for an educated, well-represented defendant." *Syal*, 963 F.2d at 905 (finding that the district court did not comply with Rule 11(b)(1)(G) because it failed to rehearse the content of the indictment or explain the separate elements of the wire fraud offense to defendant).

Lalonde argues that the district court violated Rule 11(b)(1)(G) by failing to ensure that he understood the elements of wire fraud. In particular, Lalonde argues that at no time was he made aware of the *interstate* use of wires element of the offense. This argument, however, is unsupported by the facts.

Under *Bousley*, the district court was entitled to presume that Lalonde had been informed of the nature of the charges against him because he had been provided with a copy of the indictment prior to his plea hearing. Nevertheless, prior to taking Lalonde's plea, the district court confirmed that he had read and understood the indictment and had discussed all the counts with his attorney. Special Agent Rogers then read a summarized statement of facts into the record. This statement of facts specified that "[a]mong the *interstate* wire communications which furthered the fraud scheme" was the wire transfer from Magellin to Lalonde. J.A. at 127 (emphasis added). Lalonde agreed that this testimony was accurate.

After reviewing the facts, the district court also summarized the elements of wire fraud. Lalonde correctly observes that, in its summary of the wire fraud offense, the district court failed to use the qualifying adjective "interstate" when listing the "use of the wires" element. However, this omission alone does not demonstrate that the district court failed to ensure that Lalonde was aware of the charges against him. On the contrary, Lalonde indicated to the court that he understood these charges by agreeing that he had committed the offense of wire fraud.

We view the district court's inquiry into whether Lalonde had read and understood the indictment as well as its discussion of the underlying facts of the case and the elements of the charges as sufficient to ensure that Lalonde was aware of the nature of the charges against him. Accordingly, we find that the district court did not violate Rule 11(b)(1)(G) and, thus, did not commit plain error.

### b.     Violation of Rule 11(b)(2)

Rule 11(b)(2) provides that "[b]efore accepting a plea of guilty . . . the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." The purpose of this rule is "to assist the district count in determining whether a defendant's guilty plea is truly voluntary and to produce a complete record of the factors relevant to this determination." *United States v. Gardner*, 417 F.3d 541, 544 (6th Cir. 2005) (citing *McCarthy*, 394 U.S. at 465). In order for a plea to be truly voluntary the defendant must "posses[] an understanding of the law in relation to the facts." *McCarthy*, 394 U.S. at 466. In questioning the defendant about the voluntary nature of his plea, the questions posed do not have to require a lengthy response. *Gardner*, 417 at 544. A defendant's yes-or-no answers can be sufficient to ensure the district court that his plea is voluntary. *Id*.

Lalonde argues that the district court did not properly ensure that his plea was voluntary. He contends that, because he was ill and did not understand what was happening at the plea hearing, his plea could not have been voluntary. Again, his argument lacks merit.

The record reflects that the district court engaged in a thorough inquiry to determine whether Lalonde's plea was being made voluntarily. In particular, the district court asked Lalonde whether he was on any drugs or medications that would impact his ability to comprehend the proceedings. The district judge also questioned Lalonde about his awareness of the possible sentence and the rights he would be giving up by pleading guilty. The court further inquired about the plea agreement and whether Lalonde had been threatened, forced, or bribed with promises in order to plead guilty. Finally, the judge ensured that Lalonde understood and agreed with the factual basis for the indictment. Nothing in the record indicates that Lalonde's medical condition prevented him from understanding the court's questions or providing accurate answers regarding the voluntary nature of his plea. On the contrary, the district judge explicitly noted:

> The Court has observed the appearance and responsiveness of Mr. Lalonde in giving his answers to the questions asked and based on such observations and the answers given, the Court is satisfied that Mr. Lalonde is in full possession of his faculties. He's not suffering from any apparent physical or mental illness that would impair his understanding of the proceedings and his participation in the plea negotiations undertaken on his behalf. He is not under the influence of narcotics or alcohol. He understands the proceedings in which he's engaged. He understands the nature and meaning of the charges and the consequences of his pleas of guilty.

J.A. at 133.

We find that the district court's thorough inquiry into Lalonde's ability to give a voluntary plea and its conclusion that Lalonde's plea was voluntary clearly demonstrate that it did not violate Rule 11(b)(2) and, thus, did not commit plain error.

### c.   Violation of Rule 11(b)(3)

Rule 11(b)(3) requires that "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." The purpose of this rule is "to protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." *McCarthy*, 394 U.S. at 467 (quoting Fed. R. Civ. P. 11, Notes of Advisory Committee on Criminal Rules). In applying this rule, we have provided the following guidance:

> The ideal means to establish the factual basis for a guilty plea is for the district court to ask the defendant to state, in the defendant's own words, what the defendant did that he believes constitutes the crime to which he is pleading guilty. So long as the district court ensures that the defendant's statement includes conduct – and mental state if necessary – that satisfy every element of the offense, there should be no question concerning the sufficiency of the factual basis for the guilty plea. This "ideal" method is by no means the only method, however. We recognize that the district court may determine the existence of the [Rule 11(b)(3)] factual basis from a number of sources including a statement on the record from the government prosecutors, as well as a statement from the defendant. And of course it is possible that witnesses may be called to state the factual basis with the defendant providing confirmation. Our inquiry turns, then, to whether the record of the plea hearing in this case establishes a factual basis for all the elements of [the charge].

*McCreary-Redd*, 475 F.3d at 722 (quoting *United States v. Tunning*, 69 F.3d 107, 112 (6th Cir. 1995) (internal citations omitted)). We have further noted that "where the crime is easily understood . . . a reading of the indictment, or even a summary of the charges in the indictment and an admission by the defendant, is sufficient to establish a factual basis under Rule 11." *Id.* at 722 (quoting

*Edgecomb*, 910 F.2d at 1313). A stipulation of facts signed by the defendant is also a method for establishing a factual basis for the offense. *Id.* at 724; *United States v. Baez*, 87 F.3d 805, 810 (6th Cir. 1996).

Lalonde argues that the district court erroneously found that there was a factual basis for the wire fraud charge. The wire fraud statute, 18 U.S.C. § 1343, requires proof of "(1) a scheme or artifice to defraud; (2) use of interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property." *United States v. Gale*, 468 F.3d 929, 936-37 (6th Cir. 2006) (quoting *United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003)). Lalonde contends that the allegations made in the indictment and the facts established at the plea hearing do not demonstrate an *interstate* use of the mails in furtherance of his scheme to defraud. As with his other two Rule 11 challenges, Lalonde's argument is not supported by the record.

At the plea hearing, Special Agent Rogers read a statement of facts relevant to the wire fraud offense. His account specifically mentioned that "[a]mong the *interstate* wire communications which furthered the fraud scheme" was Magellin's wire transfer "from *outside* the Southern District of Ohio to [Defendant's] Clermont Savings personal checking account in the Southern District of Ohio." J.A. at 127 (emphasis added). The Statement of Facts attached to the plea agreement also indicated that this was an interstate transfer from a California-based business. Lalonde confirmed the accuracy of both Special Agent Rogers' description of the facts and the Statement of Facts attached to the plea agreement. Based upon this record, the district court properly concluded that there was a factual basis to support the wire fraud charge. Accordingly, we find that the district court did not violate Rule 11(b)(3) and did not commit plain error.

## C.  THE DISTRICT COURT FOLLOWED PROPER SENTENCING PROCEDURE BY CORRECTLY CALCULATING THE ADVISORY GUIDELINES RANGE AS ONE OF THE SENTENCING FACTORS

### 1.  Standard of Review

Post-*Booker*, the Sentencing Guidelines are no longer mandatory, *United States v. Booker*, 543 U.S. 220, 260-61 (2005), and "the 'range of choice dictated by the facts of the case' is significantly broadened." *United States v. Gall*, 552 U.S. --, -- S. Ct. --, No. 06-7949, Slip Op. at 20 (Dec. 10, 2007). However, the Sentencing Act, 18 U.S.C. § 3553(a), "nonetheless requires judges to take account of the Guidelines *together with* other sentencing goals" when fashioning a defendant's sentence. *Booker*, 543 U.S. at 261 (emphasis added). As the Supreme Court just recently clarified in *Gall*, "the Guidelines should be the starting point and the initial benchmark" in determining a sentence and "a district court should begin all sentencing proceedings by *correctly* calculating the applicable Guidelines range." Slip Op. at 11 (emphasis added); *accord United States v. Gale*, 468 F.3d 929, 934 (6th Cir. 2006) (Post-*Booker*, "the district court must still consider the Guidelines in fashioning a defendant's sentence, and must construe them correctly in doing so.").

On appeal, we must ensure that the district court properly calculated the advisory Guidelines range as part of its overall consideration of the § 3553(a) factors.[5] *See Gall*, Slip Op. at 12 (directing appellate courts to "ensure that the district court committed no significant procedural error, such as

---

[5] Because the district court must properly calculate the advisory Guidelines sentencing range as well as consider the § 3553(a) factors, our review of the district court's Guidelines range calculation is most properly viewed as part of our review of the procedural reasonableness of the sentence. *See Gall*, Slip Op. at 12. Indeed, we cannot find that a sentencing court has properly considered the § 3553(a) factors if it miscalculated the advisory Guidelines range which it must consider together with the § 3553(a) factors. *See id.* However, because of the complexity of determining the appropriate advisory Guidelines sentencing range when multiple enhancements have been challenged, we treat this part of our procedural reasonableness analysis in its own separate section.

failing to calculate (or improperly calculating) the Guidelines range"). In evaluating the district court's calculation of the advisory Guidelines range, we review the district court's factual findings for clear error and its legal conclusion *de novo*. *United States v. McGee*, 494 F.3d 551, 554 (6th Cir. 2007); *United States v. Moncivais*, 492 F.3d 652, 660 (6th Cir. 2007). "A factual finding is clearly erroneous 'when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *McGee*, 494 F.3d at 554 (quoting *Tran v. Gonzales*, 447 F.3d 937, 943 (6th Cir. 2006)).

However, we "have not settled the question of what standard governs review of a sentencing enhancement under U.S.S.G. § 3B1.1." *Moncivias*, 492 F.3d at 660. In *Buford v. United States*, the Supreme Court held that review under U.S.S.G. § 4B1.2, regarding consolidation of a defendant's prior offenses, should be conducted "deferentially rather than *de novo*." 532 U.S. 59, 64 (2001). Since that decision, we have "reserve[d] judgment as to whether the district court's application of § 3B1.1 . . . should be reviewed deferentially or *de novo*." *United States v. Henley*, 360 F.3d 509, 516 (6th Cir. 2004). This case does not present us with an opportunity to resolve this question.

### 2.     Analysis

Lalonde argues that the district court erred in applying the Guidelines in four distinct ways. First, he contends that the district judge improperly applied a two level enhancement, pursuant to § 2F1.1, based on the district court's erroneous finding that there were multiple victims of Lalonde's scheme. Second, Lalonde claims that the court wrongly applied a two level enhancement, pursuant to § 3B1.1, for his role as manager of the scheme. Third, Lalonde argues that the district court erred in considering a 1989 Kentucky felony conviction, based upon a guilty plea entered *in absentia*, when determining his criminal history category. Finally, Lalonde maintains that the district court improperly included the amount defrauded from Wright Gaming in its calculation of Lalonde's base offense level. We find none of these arguments persuasive and uphold the district court's application of the Guidelines on each point.

#### a.     Enhancement Pursuant to § 2F1.1(b)(2)(B)

Under the Guidelines, the base offense level for wire fraud is 6. U.S.S.G. § 2F1.1(a). This offense level is increased based upon the amount of loss caused by the fraud. U.S.S.G. § 2F1.1(b)(1). Section 2F1.1(b)(2) provides that:

> If the offense involved (A) more than minimal planning, or (B) a scheme to defraud more than one victim, increase by 2 levels.

The Sentencing Commission's Commentary to § 2F1.1 explains:

> "Scheme to defraud more than one victim," as used in subsection (b)(2)(B), refers to a design or plan to obtain something of value from more than one person. In this context, "victim" refers to the person or entity from which the funds are to come directly. Thus a wire fraud in which a single telephone call was made to three distinct individuals to get each of them to invest in a pyramid scheme would involve a scheme to defraud more than one victim, but passing a fraudulently endorsed check would not, even though the maker, payee and/or payor all might be considered victims for other purposes such as restitution.

*Id.* cmt. (n. 3).

Lalonde argues that the district court improperly applied this enhancement because his activities constituted several distinct schemes victimizing one person at a time rather than one

scheme with multiple victims. Lalonde made the same argument to the district court which rejected it, concluding that "[w]hile the loss of each victim of [Lalonde's] offense was occasioned by a separate action by [Lalonda], the scheme to obtain money from various victims through fraud was, as the Guidelines describe it, 'a scheme to defraud more than one victim.'" J.A. at 206.

The district court's factual finding in this regard was not clearly erroneous. Lalonde's fraudulent activities deprived twelve victims of over $1.6 million. The indictment charged these activities as a single scheme involving multiple victims. Likewise, the Statement of Facts attached to the plea agreement, which Lalonde admitted was accurate, described Lalonde's fraudulent dealings with various individuals as part of a single scheme. Furthermore, both the Statement of Facts and Special Agent Rogers' testimony at the plea hearing indicate that Lalonde had used money obtained from one victim to pay a previous victim so as to keep the scheme going. These facts support the district court's determination that Lalonde's activities constituted a single scheme. While Lalonde did not use the same ruse to ensnare each victim, he did employ the same general technique of presenting himself as a person qualified to give financial advice in order to induce his victims to part with their money. Lalonde's prey, while individually snagged, were all caught in the same web of investment-planning-advice fraud. Accordingly, we find that the district court did not err in applying the two-level enhancement pursuant to § 2F1.1(b)(2)(B).

Moreover, even if the district court's conclusion regarding the scheme to defraud multiple victims were clearly erroneous, it would be harmless error. In addressing Lalonde's objection to the § 2F1.1(b)(2)(B) enhancement, the district court stated:

> I would also note that Mr. Lalonde is eligible for a two-level increase pursuant to Section 2F1.1.(b)(2)(A) for an offense involving more than minimal planning, in the alternative to the challenged increase under Section 2F1.1(b)(2)(B).
>
> So, accordingly, the offense level would not have been changed, even were the Court to have found merit in Mr. Lalonde's objection.

J.A. at 206. Lalonde did not object to this statement by the district court. Thus, even if Lalonde had been correct regarding in characterization of his activities as several schemes with single victims, he would still have been subject to a two-level enhancement under § 2F1.1(b)(2).

### b.  Enhancement Pursuant to § 3B1.1(c)

Section 3B1.1(c) provides for a two-level enhancement "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity." We have explained that "a defendant must have exerted control over at least one individual within a criminal organization for the enhancement of § 3B1.1 to be warranted." *United States v. Vandenberg*, 201 F.3d 805, 811 (6th Cir. 2000) (quoting *United States v. Gort-Didonato*, 109 F.3d 318, 321 (6th Cir. 1997)). In determining whether a defendant qualifies as a leader, organizer, manager, or supervisor, a district court should consider a number of factors including, but not limited to, "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1, cmt. (n. 4). *See also Moncivais*, 492 F.3d at 660. "Merely playing an essential role in the offense is not equivalent to exercising managerial control over other participants and/or the assets of a criminal enterprise." *Vandenberg*, 201 F.3d at 811 (citing *United States v. Albers*, 93 F.3d 1469, 1487 (10th Cir. 1996)).

Lalonde argues that the facts established at the plea hearing were insufficient to show that he was an organizer, leader, manager, or supervisor of the scheme. The district court rejected a

similar argument. Instead, the district court applied the factors set forth in § 3B1.1 and found that Lalonde: (1) "exercised decision-making authority as regards the manner in which the scheme would be conducted;" (2) "directed some of the activities of Thomas McGhee" in conducting the offense; and (3) "claimed a larger share of the proceeds of the scheme" than his co-conspirators. J.A. at 208. In reaching these conclusions, the court considered the fact that Lalonde had directed McGhee to set up individual brokerage accounts for various victims of the fraud. The court also noted that Lalonde had personally obtained all the $880,319 sent by Magellin and did not share this amount with his co-conspirators. Based on these facts, the court found that Lalonde was a leader or manager and that the two-level enhancement was appropriate.

We find that the district court's legal conclusion in this regard should be upheld under either a *de novo* or deferential standard of review. The district court properly applied the factors for determining management of a criminal organization. In particular, the district court focused on the fact that Lalonde had exercised authority and control over others and had received a larger share of the profits from the scheme. The combination of these factors is sufficient to show that Lalonde was a manager, leader, or organizer of the scheme. *See, e.g., Moncivais*, 492 F.3d at 660-61 (upholding the district court's conclusion that defendant was an organizer or leader based on facts which demonstrated that defendant had exercised a significant degree of control over others, was involved to a significant degree in the planning of the operation, and had a large stake in its profitability).

The factual record further supports the district court's conclusions. The Statement of Facts, which Lalonde admitted was accurate, indicates that Lalonde was the person who "induced" most of the victims to send their money either directly to him or to McGhee at Continental Capital. J.A. at 285-90. The Statement of Facts also indicates that Lalonde, himself, "used $301,000.00 of Magellin's $880,319.00 to repay Edwina Knott and spent the rest." *Id.* at 287. Lalonde alone kept the money from several of the other victims, including Sheri Weber, Edwina Knott, Bank One, and Monique Bergeron. Finally, Lalonde kept most of the money received from the Wright Group. The fact that Lalonde directed McGhee and Liggett to act and then kept the majority of the fruits of their crime for himself is sufficient evidence to show that he was a manager or leader of the scheme. Accordingly, we find that the district court properly applied the § 3B1.1 enhancement.

### c.    Increase of Criminal History Score Pursuant to § 4A1.1(a)

In determining a defendant's criminal history category, § 4A1.1(a) directs the district court to "[a]dd three points for each prior sentence of imprisonment exceeding one year and one month." Section 4A1.2(a)(1) defines a "prior sentence" as "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere*, for conduct not part of the instant offense." The official commentary to § 4A1.1 indicates that "[a] sentence for . . . an invalid conviction is not counted." U.S.S.G. § 4A1.1 cmt. (n. 1). The commentary to § 4A1.2 further specifies:

> Sentences resulting from convictions that (A) have been reversed or vacated because of errors of law or because of subsequently-discovered evidence exonerating the defendant, or (B) have been ruled constitutionally invalid in a prior case are not to be counted. *With respect to the current sentencing proceeding, this guideline and commentary do not confer upon the defendant any right to attack collaterally a prior conviction or sentence beyond any such rights otherwise recognized in law* (e.g., 21 U.S.C. § 851 expressly provides that a defendant may collaterally attack certain prior convictions).

U.S.S.G. § 4A1.2, cmt (n. 6) (emphasis added). Thus, the Guidelines only explicitly prevent the use of prior convictions which have already been held invalid and leave open the question of whether a defendant may challenge the validity of other prior convictions at sentencing.

In *United States v. McGlocklin*, sitting *en banc*, we held that, under limited circumstances, a sentencing judge has discretion to entertain a defendant's challenge to the inclusion of prior state convictions in his criminal history score based on the grounds of alleged federal constitutional violations. 8 F.3d 1037, 1043 (6th Cir. 1993). However, we clarified that, in seeking the exclusion of such a conviction for federal sentencing purposes, a defendant may only challenge the validity of his conviction under federal, not state, law. *Id.* at 1047.

Shortly after we decided *McGlocklin*, the Supreme Court found that for purposes of the penalty enhancements for prior convictions that are imposed by the Armed Career Criminal Act ("ACCA") of 1984, 18 U.S.C. § 924(e), a defendant in a federal sentencing proceeding has no right to collaterally attack the validity of his previous state convictions, with the sole exception of convictions obtained in violation of the right to counsel. *Custis v. United States*, 511 U.S. 485, 487 (1994). Finding *Custis* to have superseded *McGlocklin*, we have subsequently held that a defendant in a sentencing proceeding may not collaterally challenge the use of prior convictions or parole revocations for purposes of criminal history calculation unless the challenge is based upon an alleged violation of the right to counsel. *See United States v. Carter*, 374 F.3d 399, 409 (6th Cir. 2004); *United States v. Bonds*, 48 F.3d 184, 186-87 (6th Cir. 1995).

In the instant case, the district court increased Lalonde's criminal history score based upon a 1989 Kentucky conviction for Theft by Failure to Make Required Disposition. The conviction was based upon Lalonde's failure to make payments on or return a leased vehicle and was imposed following a guilty plea entered in Boone County on September 29, 1989 through Lalonde's attorney James Ogden. Lalonde was not present at that plea hearing. Lalonde argues that, because this conviction is invalid under state law, it should not have been used for a criminal history calculation. The district court rejected a similar argument for exclusion of the conviction at the sentencing hearing. The district court concluded that Lalonde "[had] not identified any basis under the Sentencing Guidelines or federal law for the exclusion of the conviction and the calculation of his Criminal History Category on this point." J.A. at 209-10.

The district court's legal conclusion on this point was correct. Kentucky law seems to provide that a felony conviction based upon a guilty plea entered *in absentia* is invalid. *See* Ky. R. Crim. P. 8.28 (2006) ("The defendant shall be present at the arraignment, at every critical stage of the trial including the empaneling of the jury and the return of the verdict, and at the imposition of sentence.... In prosecutions for misdemeanors or violations the court may permit arraignment, plea, trial and imposition of sentence in the defendant's absence"); *Tipton v. Commonwealth*, 770 S.W.2d 239, 242 (Ky. Ct. App. 1989) ("RCr. 8.28(4) is discretionary, and we consider it an abuse of discretion to accept a plea of guilty in absentia for any offense, such as driving under the influence, for which an enhanced penalty may be imposed for subsequent convictions."). Nevertheless, no Kentucky court had declared Lalonde's 1989 conviction invalid prior to his sentencing in the instant case. Thus, because Lalonde's challenge to his conviction was not based upon an alleged violation of the right to counsel, the district court was bound by *Bonds* and *Carter* not to allow Lalonde to collaterally challenge the validity of the conviction at sentencing. Moreover, even if *McGlocklin* were still valid precedent, Lalonde's challenge to his conviction could not have been sustained because his challenge was based on state law, not the federal constitution. Accordingly, we find that, even if Lalonde is correct in asserting the invalidity of his prior state law conviction, the district court properly included this conviction in its calculation of Lalonde's criminal history category.

### d.     Fraud Loss Calculation Pursuant to § 1B1.3(a)(3)

Section 2F1.1(b)(1)(M) directs a sentencing court to increase the base level of the wire fraud offense by 12 if the loss caused by the fraud exceeded $1,500,000 but was less than $2,500,000. Section 1B1.3(a) further specifies that such an increase of the base level "shall be determined on the basis of . . . all harm that resulted from the acts and omissions" of the defendant and, in the case of jointly undertaken criminal activity, of others in furtherance of the jointly undertaken criminal activity. The commentary to this section provides an example of how to apply this rule to calculate the amount of loss in a fraud case:

> Defendants F and G, working together, design and execute a scheme to sell fraudulent stocks by telephone. Defendant F fraudulently obtains $20,000. Defendant G fraudulently obtains $35,000. Each is convicted of mail fraud. Defendants F and G each are accountable for the entire amount ($55,000). Each defendant is accountable for the amount he personally obtained under subsection (a)(1)(A). Each defendant is accountable for the amount obtained by his accomplice under subsection (a)(1)(B) because the conduct of each was in furtherance of the jointly undertaken criminal activity and was reasonably foreseeable in connection with that criminal activity.

U.S.S.G. § 1B1.3, cmt. (n. 2). We have also clarified that, in determining an increase in the base offense level, "[p]roof of relevant conduct must be supported by some minimal indicium of reliability beyond mere allegation." *United States v. Nesbitt*, 90 F.3d 164, 170 (6th Cir. 1996)(quoting *United States v. Zimmer*, 14 F.3d 286, 290 (6th Cir. 1994)).

Lalonde argues that the district court erred by including the $460,000 loss caused to Wright Gaming in its calculation of his offense level. Lalonde contends that he did not participate in the fraud against Wright Gaming which, he claims, was orchestrated solely by Liggett. The district court rejected this same argument at the sentencing hearing, finding that Lalonde "shared the proceeds of the fraud [and] was present at a meeting when Mr. Liggett made false representations in order to defraud Mr. Wright." J.A. at 213.

The district court's factual conclusion regarding Lalonde's participation in the fraud against Wright Gaming is not clearly erroneous. The Statement of Facts, which Lalonde agreed was accurate at the plea hearing, indicates that "defendant and Liggett induced Wright Gaming to send $460,000.000 [sic] to the Cloverleaf account at Continental Capital, based on *their* promise to 'enhance' Wright Gaming's creditworthiness in obtaining a loan for a barge casino on the Mississippi River." J.A. at 289 (emphasis added). The Statement of Facts also states that "defendant and Liggett *both* received part of the $460,000.00." *Id.* (emphasis added). Special Agent Rogers' account of the facts, which Lalonde also agreed was accurate, similarly indicates that "defendant and Liggett induced Wright Gaming to send [them] $460,000.00" and that "defendant and Liggett *both* received part of the $460,000." J.A. at 126-27 (emphasis added). These undisputed facts clearly show that Lalonde was involved in the scheme to defraud Wright Gaming. Thus, the district court properly included the $460,000 loss caused to Wright Gaming as part of its calculation of Lalonde's offense level.

### D. THE 78-MONTH SENTENCE IMPOSED BY THE DISTRICT COURT IS REASONABLE.

#### 1. Standard of Review

We review a district court's sentencing determination, "under a deferential abuse-of-discretion standard," for reasonableness. *Gall*, Slip Op. at 2; *see also Rita v. United States*, 127 S. Ct. 2456, 2459 (2007); *Booker*, 543 U.S. at 260-61, which, as the Supreme Court has recently confirmed in *Gall*, contains both procedural and substantive components. Slip Op. at 12; *accord United States v. Thomas*, 498 F.3d 336, 339 (6th Cir. 2007); *United States v. Jones*, 489 F.3d 243, 250 (6th Cir. 2007).

Our first task in evaluating the reasonableness of the district court's sentence is to "ensure that the district committed no significant *procedural* error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence – including an explanation for any deviation from the Guidelines range." *Gall*, Slip Op. at 12 (emphasis added). A district court commits such error "if the district judge fails to 'consider' the applicable Guidelines range or neglects to 'consider' the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration.'" *Jones*, 489 F.3d at 250-51 (quoting *United States v. Ferguson*, 456 F.3d 660, 664 (6th Cir. 2006)).[6] Procedural error may also occur if the sentencing judge fails to "set forth enough [of a statement of reasons] to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority." *Rita*, 127 S. Ct. at 2468 (citing *United States v. Taylor*, 487 U.S. 326, 336-37 (1988)). "When a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *Jones*, 489 F.3d at 250-51 (quoting *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006)). After considering such arguments, the district judge cannot simply rely upon the advisory Guidelines range, but rather "must make an individualized assessment based on the facts presented." *Gall*, Slip. Op. at 12. Finally, the district judge "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.*

---

[6] Section 3553(a) requires a district court to consider the following factors when imposing a sentence:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed
   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) to afford adequate deterrence to criminal conduct;
   (C) to protect the public from further crimes of the defendant; and
   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .
(5) any pertinent policy statement (A) issued by the Sentencing Commission . . .
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After we have determined that a defendant's sentence is procedurally reasonable, we must "then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.* Sentences falling within the applicable Guidelines range are afforded a rebuttable presumption of reasonableness. *Rita*, 127 S. Ct. at 2462; *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006). However, we have also indicated that a "sentence may [be] substantively unreasonable where the district court 'select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors or giv[es] an unreasonable amount of weight to any pertinent factor.'" *Jones*, 489 F.3d at 252 (quoting *Ferguson*, 456 F.3d at 664). Thus, extreme procedural unreasonableness may compel the conclusion that the sentence is also substantively unreasonable.

### 2.    Analysis

Lalonde argues that his sentence is both procedurally and substantively unreasonable. We disagree and accordingly uphold the sentence imposed by the district court.

#### a.    Procedural Unreasonableness

The record in this case does not support a claim of procedural unreasonableness. Before announcing its sentence, the district court heard Lalonde's argument that a sentence lower than the Guidelines range was appropriate due to his ill health. The district judge then asked the federal marshal as well as the probation officer about Lalonde's ability to receive adequate medical care while in custody. After this inquiry, the court imposed its sentence explaining that it had considered not only the advisory Guidelines range, but also the other § 3553(a) factors. The court then proceeded to discuss the facts relating to these factors. In particular, the court discussed Lalonde's criminal history and his status as a "chronic offender," the "severe hardship" caused to Lalonde's victims, and the need for the sentence to provide adequate "deterrence to others who might contemplate engaging in similar fraudulent schemes." J.A. at 227. The judge also stated:

> The Court believes Mr. Lalonde's sentence will serve to protect the public from the very real risk of additional frauds and crimes by Mr. Lalonde.
>
> A longer period of incarceration may also allow Mr. Lalonde to gain additional vocational skills to assist him in pursuing legitimate avenues of earning a living upon his release and to provide for additional medical care that Mr. Lalonde may need during his incarceration.

*Id.* at 227-28. Based upon these reasons, the court concluded that the sentence imposed was "sufficient but not greater than necessary to comply with the factors set forth in [§ 3553(a)]." *Id.* at 228. This record demonstrates that, not only did the district court articulate the reasons for its sentence, but it also considered the § 3553(a) factors and Lalonde's argument that his sentence should be decreased because of his poor physical health. Thus, the district court's sentence satisfies the requirements of procedural reasonableness and cannot be overturned on this ground.

#### b.    Substantive Unreasonableness

Lalonde argues that a 78-month sentence is unreasonable given his age, his terrible health, and the nature of his crime. In particular, Lalonde contends that, because of his heart condition, his sentence might easily be a life sentence. We are not convinced that 78 months is unreasonable in light of the § 3553(a) factors.

Lalonde's 78-month sentence is within the correctly calculated Guidelines' range of 63-78 months, and is thereby entitled to a presumption of reasonableness under *Williams* and *Rita*. As the Supreme Court indicated in *Rita*:

> [T]he presumption "reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, *both* the sentencing judge and the Sentencing Commission will have reached the *same* conclusion as to the proper sentence in the particular case. That double determination significantly increases the likelihood that the sentence is a reasonable one.

127 S. Ct. at 2463. Lalonde has not provided the Court with sufficient reasons to overturn the conclusions of the district court and the Sentencing Commission regarding the reasonableness of his sentence. While Lalonde does suffer from health problems, these have been and will continue to be adequately treated while he is in prison. Lalonde provides no arguments or evidence that he would receive better health care if his sentence were reduced. Furthermore, given the seriousness of Lalonde's scheme which defrauded over $1.6 million dollars from several individuals and caused major financial and emotional disruption in those victims' lives, we find that the 78-month sentence is reasonable and is sufficient, but not greater than necessary, to comply with the purposes of sentencing that are outlined in 18 U.S.C. § 3553(a)(2) and which the district court properly considered in this case.

### III. CONCLUSION

For the foregoing reasons, the conviction and sentence imposed by the district court are **AFFIRMED**.