**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT
100 EAST FIFTH STREET, ROOM 538
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

LEONARD GREEN
CLERK

TELEPHONE
(513) 564-7000

December 14, 2007

Christopher K. Barnes
Michael M. Losavio

    Re:    Case No. 06-4536
            *United States of America v. Paul M. Lalonde*
            District Court No. 02-00168

Dear Counsel:

    Enclosed are copies of corrected pages from the decision originally sent to you on December 12, 2007. Please make corrections in your publication version as indicated on pages 2, 10, and 16.

    Thank you for your cooperation in this matter.

                                    Yours very truly,

                                    Leonard Green, Clerk

                                    By *Linda K. Martin*
                                    (Mrs.) Linda K. Martin
                                    Deputy Clerk

LKM/swh
Enclosure

cc:    Honorable Sandra S, Beckwith, Chief Judge
        Clerk, United States District Court
        Lexis Nexis
        West Publishing Company
        Commerce Clearing House, Inc.
        Bureau of National Affairs
        M. Lee Publishers LLC
        Lawyers Weekly
        Loislaw

## I. BACKGROUND

From 1994 to 1998, Lalonde engaged in a scheme to fraudulently obtain over $1.6 million from various individuals and corporations. Lalonde and his associates, Richard G. Liggett ("Liggett") and Thomas McGhee ("McGhee"), obtained money from victims by falsely representing that they worked as either attorneys or financial advisors who would invest the victims' money. Rather than investing the money, however, Lalonde and his associates converted the funds to their own personal use. Lalonde failed to report this money as taxable income and thus willfully avoided paying federal income tax during these years as well.

The only details of the scheme that are relevant for this appeal concern Lalonde's dealings with Magellin Entertainment ("Magellin") and with Wright Gaming. In 1997 and 1998, Lalonde, with the help of McGhee, a registered securities broker with Continental Capital Securities ("Continental Capital") in Toledo, Ohio, induced Magellin, a California based entity, to send $880,319 to Lalonde for the purpose of enhancing Magellin's ability to secure financing for its motion picture business. Lalonde told Magellin that he would deposit this money in an escrow account and would provide Magellin with certificates of deposit to use as default collateral on any loans that Magellin might seek. The certificates of deposit were to be protected by default insurance and were to be placed with McGhee in an account set up for Magellin at Continental Capital. Lalonde never obtained any such certificates, but instead spent a substantial part of the $880,319 on personal expenses and repayment of earlier victims of the scheme.

In 1998, Lalonde and Liggett similarly induced Wright Gaming to send them $460,000 for the purpose of assisting Wright Gaming to obtain $45 million in financing for a barge casino on the Mississippi River. Lalonde and Liggett instructed Wright Gaming to wire transfer the funds to an account in the name of "Cloverleaf" at Continental Capital. The money sent to the account would be used to rent certificates of deposit owned by others and to buy Treasury bills which would enhance Wright Gaming's ability to secure financing. Cloverleaf would then provide Wright Gaming with the $45 million loan. After Wright Gaming wired the money, $73,000 was transferred to Lalonde's account and $46,000 went to Liggett. Lalonde and Liggett did not rent any Treasury bills nor did they obtain financing for Wright Gaming. Instead, they used the money for their own personal expenses.

Based upon his involvement in this scheme, Lalonde was indicted on December 4, 2002 in the Southern District of Ohio for one count of conspiracy, in violation of 18 U.S.C. § 371, nineteen counts of wire fraud, in violation of 18 U.S.C. § 2 and § 1343, nineteen counts of money laundering, in violation of 18 U.S.C. § 2 and § 1956, and three counts of income tax evasion, in violation of 26 U.S.C. § 2 and § 7201.

On January 16, 2003, Lalonde was arraigned on the indictment before a federal magistrate judge. Prior to the arraignment, defense counsel was provided with a copy of the indictment. At the hearing, the attorney for the government offered to read the indictment to Lalonde if he chose not to waive such a reading. However, because defense counsel proceeded to address other matters with the court, the indictment was never read to Lalonde and no waiver of reading was made. Lalonde did not object to the magistrate judge's failure to read the indictment.

On December 16, 2003, pursuant to a written plea agreement with an attached Statement of Facts, Lalonde entered a plea of guilty to Count 3 (wire fraud) and Count 41 (income tax evasion) of the indictment. At the hearing, the district judge confirmed that Lalonde had read and understood the indictment and had discussed all the counts charged in the indictment, and any defenses thereto, with defense counsel. The district judge also questioned Lalonde and the government about the plea agreement and Lalonde's awareness of the consequences of changing his plea. Based on this inquiry,

*Edgecomb*, 910 F.2d at 1313). A stipulation of facts signed by the defendant is also a method for establishing a factual basis for the offense. *Id.* at 724; *United States v. Baez*, 87 F.3d 805, 810 (6th Cir. 1996).

Lalonde argues that the district court erroneously found that there was a factual basis for the wire fraud charge. The wire fraud statute, 18 U.S.C. § 1343, requires proof of "(1) a scheme or artifice to defraud; (2) use of interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property." *United States v. Gale*, 468 F.3d 929, 936-37 (6th Cir. 2006) (quoting *United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003)). Lalonde contends that the allegations made in the indictment and the facts established at the plea hearing do not demonstrate an *interstate* use of the mails in furtherance of his scheme to defraud. As with his other two Rule 11 challenges, Lalonde's argument is not supported by the record.

At the plea hearing, Special Agent Rogers read a statement of facts relevant to the wire fraud offense. His account specifically mentioned that "[a]mong the *interstate* wire communications which furthered the fraud scheme" was Magellin's wire transfer "from *outside* the Southern District of Ohio to [Defendant's] Clermont Savings personal checking account in the Southern District of Ohio." J.A. at 127 (emphasis added). The Statement of Facts attached to the plea agreement also indicated that this was an interstate transfer from a California-based business. Lalonde confirmed the accuracy of both Special Agent Rogers' description of the facts and the Statement of Facts attached to the plea agreement. Based upon this record, the district court properly concluded that there was a factual basis to support the wire fraud charge. Accordingly, we find that the district court did not violate Rule 11(b)(3) and did not commit plain error.

C. **THE DISTRICT COURT FOLLOWED PROPER SENTENCING PROCEDURE BY CORRECTLY CALCULATING THE ADVISORY GUIDELINES RANGE AS ONE OF THE SENTENCING FACTORS**

1. **Standard of Review**    *Gall v. United States,*

Post-*Booker*, the Sentencing Guidelines are no longer mandatory, *United States v. Booker*, 543 U.S. 220, 260-61 (2005), and "the 'range of choice dictated by the facts of the case' is significantly broadened." ~~United States v. Gall~~, 552 U.S. --, -- S. Ct. --, No. 06-7949, Slip Op. at 20 (Dec. 10, 2007). However, the Sentencing Act, 18 U.S.C. § 3553(a), "nonetheless requires judges to take account of the Guidelines *together with* other sentencing goals" when fashioning a defendant's sentence. *Booker*, 543 U.S. at 261 (emphasis added). As the Supreme Court just recently clarified in *Gall*, "the Guidelines should be the starting point and the initial benchmark" in determining a sentence and "a district court should begin all sentencing proceedings by *correctly* calculating the applicable Guidelines range." Slip Op. at 11 (emphasis added); *accord United States v. Gale*, 468 F.3d 929, 934 (6th Cir. 2006) (Post-*Booker*, "the district court must still consider the Guidelines in fashioning a defendant's sentence, and must construe them correctly in doing so.").

On appeal, we must ensure that the district court properly calculated the advisory Guidelines range as part of its overall consideration of the § 3553(a) factors.[5] *See Gall*, Slip Op. at 12 (directing appellate courts to "ensure that the district court committed no significant procedural error, such as

---

[5] Because the district court must properly calculate the advisory Guidelines sentencing range as well as consider the § 3553(a) factors, our review of the district court's Guidelines range calculation is most properly viewed as part of our review of the procedural reasonableness of the sentence. *See Gall*, Slip Op. at 12. Indeed, we cannot find that a sentencing court has properly considered the § 3553(a) factors if it miscalculated the advisory Guidelines range which it must consider together with the § 3553(a) factors. *See id.* However, because of the complexity of determining the appropriate advisory Guidelines sentencing range when multiple enhancements have been challenged, we treat this part of our procedural reasonableness analysis in its own separate section.

### D. THE 78-MONTH SENTENCE IMPOSED BY THE DISTRICT COURT IS REASONABLE.

#### 1. Standard of Review

We review a district court's sentencing determination, "under a deferential abuse-of-discretion standard," for reasonableness. *Gall*, Slip Op. at 2; *see also Rita v. United States*, 127 S. Ct. 2456, 2459 (2007); *Booker*, 543 U.S. at 260-61, which, as the Supreme Court has recently confirmed in *Gall*, contains both procedural and substantive components. Slip Op. at 12; *accord United States v. Thomas*, 498 F.3d 336, 339 (6th Cir. 2007); *United States v. Jones*, 489 F.3d 243, 250 (6th Cir. 2007).

Our first task [*court*] in evaluating the reasonableness of the district court's sentence is to "ensure that the district [*court*] committed no significant *procedural* error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence – including an explanation for any deviation from the Guidelines range." *Gall*, Slip Op. at 12 (emphasis added). A district court commits such error "if the district judge fails to 'consider' the applicable Guidelines range or neglects to 'consider' the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration.'" *Jones*, 489 F.3d at 250-51 (quoting *United States v. Ferguson*, 456 F.3d 660, 664 (6th Cir. 2006)).[6] Procedural error may also occur if the sentencing judge fails to "set forth enough [of a statement of reasons] to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority." *Rita*, 127 S. Ct. at 2468 (citing *United States v. Taylor*, 487 U.S. 326, 336-37 (1988)). "When a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *Jones*, 489 F.3d at 250-51 (quoting *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006)). After considering such arguments, the district judge cannot simply rely upon the advisory Guidelines range, but rather "must make an individualized assessment based on the facts presented." *Gall*, Slip. Op. at 12. Finally, the district judge "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.*

---

[6] Section 3553(a) requires a district court to consider the following factors when imposing a sentence:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .
(5) any pertinent policy statement (A) issued by the Sentencing Commission . . .
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).